CHARLES W. GREEN *vs.* HENRY CLAY.
SAME *vs.* THOMAS COX.

In the absence of a known contract to the contrary, a person put in charge of a saw-mill by the owner or lessee thereof may lawfully receive payment in money or otherwise for lumber sawed by him at the mill. And evidence of a custom in former years to make such payments to other persons so put in charge of the mill is competent.

The refusal of a judge to make a special inquiry of a jury, on the morning after they had rendered their verdict, and after their separation, as to their finding upon a particular point, furnishes no ground of exception.

Two actions of contract to recover compensation for sawing lumber at the plaintiff's mill. The answers denied the making of any contract therefor with the plaintiff, and averred that the contract for the same was made with one Jenkins, who had the use and occupation of the mill, and to whom the defendants had made payment, by work done for him. Declarations in set-off were also filed, with items for services rendered and materials furnished.

The cases were tried together in the superior court, before *Brigham,* J., and it appeared that in January 1861 the plaintiff became the lessee of the mill, and employed as his agent Adams Wiley, who had carried it on for eight years before, and who let it for the plaintiff to one Anderson until the winter of 1862–1863, when he let it to Henry Jenkins, upon the terms that Jenkins should furnish all the labor and half of the oil and files, and make all small repairs, and have half of the earnings, and of the chips, bark and sawdust. The evidence was conflicting as to whether Jenkins should collect all the bills, Wiley testifying that Jenkins was only to collect a few small outside bills in Melrose and Saugus. The sawing for the defendants was done during the continuance of the lease to Jenkins.

The defendants introduced evidence, under objection, tending to show that they and other persons had paid to Anderson, while he carried on the mill, for sawing done by him there, in materials, labor and provisions. They also introduced evidence tending to prove the items for labor and materials, mentioned in their declarations in set-off, as having been rendered and

Green *v.* Clay.

furnished chiefly to Jenkins, but in part to Wiley, at a time when he was in charge of the mill while Jenkins was sick. The judge ruled that no labor performed for Jenkins or materials furnished to him could be allowed in set-off, but the same, so far as they had been received and allowed by Jenkins in payment for sawing done by him there, might be considered in support of the plea of payment, and any labor or materials furnished to Wiley acting as the plaintiff's agent in running the mill might be considered in set-off.

The judge also instructed the jury as follows :

"If there was, known to the defendants, a contract between Wiley, acting as the agent of the plaintiff, and Jenkins, that Jenkins should not collect the price or fees of sawing, a payment by either of the defendants to Jenkins would not be a defence to their liability to pay to the plaintiff for sawing done by Jenkins under such a contract. A custom, existing for a series of years, and uniform and known and acted upon by the defendants, as to the time of paying for sawing at this mill, and the person collecting the price or fees of such sawing, which is in conformity with the contract as claimed by the plaintiff, would be evidence tending to show that they knew that Jenkins was not authorized to collect such price or fees, or, if authorized to collect such price or fees, not authorized so to do until the end of the milling season. If Jenkins, as the defendants knew, was not authorized to collect of them the price of sawing done for them, their payments to him will not operate as defences to this action. But if Jenkins was authorized to collect the prices of sawing, and collected these of the defendants, before the time when he was authorized to do so, with the knowledge of the defendants, such collections will protect the defendants as payments. In the absence of such knowledge, Jenkins, if the mill was let to him, or he was employed to run it by Wiley, as the agent of the plaintiff, on shares, by virtue of such a letting or employment, might collect, and the defendants might pay to him, he price or fees of sawing done at the mill by him for them, and such payments would be defences to these actions ; and the performance of labor by the defendants, by agreement with said

Jenkins, in compensation for such sawing, or the furnishing of merchandise to said Jenkins, in compensation for said sawing might by the agreement of the defendants with Jenkins become payments which would operate as defences to these actions."

The jury returned verdicts for the plaintiff, with $3.19 damages in the first action, and $14.15 in the second; and found specially that " by the contract between Jenkins and Wiley, acting as the agent of the plaintiff, Jenkins did not agree not to collect any but small outside bills." These verdicts were returned at half past six in the afternoon, the counsel of the parties not being present; and the next morning, at the opening of court, the plaintiff requested the court to inquire of them " whether they found the sums claimed in the defendants' declarations in set-off, or on payment." The judge declined to put the inquiry to them.

The plaintiff alleged exceptions.

*A. V. Lynde*, for the plaintiff.

*C. P. Judd*, for the defendants.

CHAPMAN, J. The facts in these cases are not very clearly stated in the bill of exceptions. The plaintiff appears to have been the lessee of the saw-mill in question, and to have employed one Wiley, who had for many years managed it, to act as his agent. Wiley let it for some years to one Anderson, and in the winter of 1862–1863 let it to Henry Jenkins. The terms of this letting were, that Jenkins was to furnish the labor and certain other things, and have half the earnings, and half the chips, bark and sawdust. Whether he was to collect the earnings and pay half to the plaintiff, or the plaintiff was to collect them and pay half to him, was a matter in dispute; but the jury found specially that Jenkins did not agree that he would not collect them. Jenkins appears to have had charge of the whole business, and it does not appear that any of the customers had notice that the plaintiff had any interest in the matter before the business was closed.

The present actions are brought to recover compensation for sawing done by Jenkins for each of the defendants. Under such a contract as is stated in the bill of exceptions, it is difficult

to see how the plaintiff can maintain the actions; but no exception is taken on this point. Clearly there is no ground on which it can be contended that the defendants had not a right to contract with Jenkins for sawing, and pay him for the work. The instructions to the jury were sufficiently favorable to the plaintiff on this point.

The evidence that it had been the custom in former years to make payment to those persons who had occupied the mill under contracts with Wiley was not material; but it was not inadmissible. If it had appeared that Jenkins had made a private contract with the plaintiff that he would not collect the bills for sawing, of which contract the defendants were ignorant, the defendants might have been justified in making payment for sawing to the person who had charge of the mill, as they and others had been accustomed to do in former years. But in the absence of any such agreement on the part of Jenkins, his right to re ceive payment would result legally from his contract.

The plaintiff's counsel requested the presiding judge to inquire of the jury " whether they found the sums claimed in the defendants' declarations in set-off, or on payment." The judge declined to make the inquiry, and his decision is excepted to. It is not unusual, and it is often very convenient, in our system of practice, to make inquiries of the jury in respect to their findings of particular facts. But these inquiries are always made when they render their verdict, and before they separate. After they have rendered it and separated, it would be unsafe to permit such inquiries to be made; for the jurors are no longer under restraint, as to conversing with any person or hearing the conversation of any person in regard to the case. The plaintiff's request was not made till the morning after the jury had rendered their verdict and separated. This was too late. The judge had no discretionary right to make the inquiry at that time, without the consent of both parties.

But we cannot see how the question was material. It is stated that the court ruled that no labor performed for Jenkins, or cash paid or materials furnished to him, could be allowed in set-off; but the same, so far as they had been received and

allowed by him in payment for sawing done, might be considered, in support of the plea of payment. Under this instruction all that was allowed must have been received by him in payment, and the account in set-off was excluded.

The question of what costs the plaintiff is entitled to recover has been argued, but it is not brought here by the bill of exceptions. The case is not here, but merely the questions stated in the bill. But under the instruction above mentioned, it is difficult to see how any question as to costs can arise.

*Exceptions overruled.*